```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

ROCHESTER HOLMES,              )
                               )
          Plaintiff            )
                               )
     v.                        )    Case No. 2:05 cv 447
                               )
JOHN E. POTTER, POSTMASTER     )
GENERAL, UNITED STATES POSTAL  )
SERVICE,                       )
                               )
          Defendant            )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, John E. Potter, Postmaster General of the United States Postal Service, on July 7, 2006, and the Motion to File Supplement to Reply - Instanter filed by the defendant on December 11, 2006. For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**, and the motion to file supplement is **DENIED AS MOOT**.

Background

The plaintiff, Rochester Holmes, served for approximately 19 months in the United States Air Force, from April 7, 1969 until November 25, 1970. (Defendant's Req. For Admission ¶ 1) Beginning in June 1974, Holmes was employed by the United States Postal Service in St. Paul, Minnesota. (Plaintiff's Ex. D) In 1992, he filed a complaint against the post office in Minnesota, alleging violations of Title VII. (Plaintiff's Ex. E) This matter was resolved according to a Stipulation for Compromise Settlement and Release of Claims, entered in October 1994. (Plaintiff's Ex. E)

Due to the circumstances underlying the Minnesota claim, Holmes ceased his employment with the post office. (Affidavit of Rochester Holmes ¶ 18) He further claims that, because he ended his employment, he was required to withdraw his existing retirement annuity. Holmes completed the forms necessary to withdraw approximately $60,000 on July 23, 1993 (Resp. Ex. A)

The settlement agreement entered in the Minnesota case provided for Holmes' relocation to the Gary, Indiana post office as an EAS Level 16 supervisor of maintenance operations. (Plaintiff's Ex. E, p. 2) The agreement further stated that Holmes "is not a postal employee until he reports and presents himself to Gary, Indiana for work." (Plaintiff's Ex. E, p. 2)

Holmes began employment at the Gary, Indiana facility on November 12, 1994. While employed at the Gary post office, Holmes filed a complaint with the EEOC alleging that he was denied a reasonable accommodation for his disability in violation of the Rehabilitation Act of 1973. (Complaint ¶ 7) The case was assigned to an EEOC administrative law judge, who referred the case to mediation. (Complaint ¶ 10)

The mediation was held on May 26, 2004, and attended by Charles Donnigan, the senior plan manager for the postal service's Greater Indiana District, and Richard Rampage, an attorney for the postal service. Holmes was present with his counsel, and the mediation was led by EEOC mediator Tae Sture. (Declaration of Ivan E. Bodensteiner, ¶ 4) During the mediation, the parties were separated, and all communication took place through the mediator.

2

(Bodensteiner Dec. ¶ 4) The terms that were discussed through the mediator, and ultimately incorporated into a settlement agreement, included the calculation of Holmes' retirement benefits, the salary that would serve as the basis for these benefits, and the effective date of Holmes' eventual retirement. (Holmes Aff. ¶¶ 7, 8, 9) According to Holmes, he was not informed at the mediation that his retirement benefits would be subject to "the usual rules," including a reduction to his benefits based on Holmes' 1994 retirement withdrawal, calculation of his benefits according to a "high-three average salary," and the "standardized deductions" for health care premiums while Holmes was on leave. (Bodensteiner Dec. ¶¶ 5, 6; Holmes Aff. ¶¶ 11, 12, 13)

At the mediation, the parties entered a Settlement Agreement which provided that Holmes would be on administrative leave status retroactive to January 1, 2003, and ending with his retirement in October 2004. (Settlement Agreement, ¶ 1) Holmes was to be paid for 20 hours per week on administrative leave status and 20 hours per week approved leave without pay. His 2003 salary rate was $69,003.00, and in 2004, his salary rate was $71,418.00. The agreement further required the withdrawal of Holmes' EEOC complaint and included the statement that "this settlement agreement contains all of the terms and conditions agreed to by the parties in the settlement of this matter." (Settlement Agreement, ¶ 5)

In June 2004, the Office of Personnel Management ("OPM") sent Holmes a form indicating, among others, that his retirement

3

annuity benefits would be $3,525.07 per month and showing his annual leave balance at negative 168 hours. (Plaintiff's Resp., Ex. B) In July, a second annuity estimate was provided which indicated that Holmes' retirement benefits would be $3,547.05 and showed an annual leave balance of negative 160 hours. (Plaintiff's Ex. C)  These retirement figures generally coincided with Holmes' expectations as a result of the mediation. However, on December 7, 2004, the OPM informed Holmes that, unless his 1994 withdrawal of retirement funds were "redeposited," his annuity would be reduced proportionately. (Resp. Ex. D)

The same OPM forms from June and July 2004 which indicated Holmes' retirement benefits at more than $3,500 also provided calculations of his "high-three" average salary.(Plaintiff's Resp. Ex. B, C)  On the June 2004 form, Holmes' average salary was $65,149, based on his salaries from the years 2001 through 2004.  In July, the second form showed corrected figures, including Holmes' accurate 2004 salary of $71,418, and continued to calculate his benefits according to the high-three average.

Following the settlement, Holmes also took issue with the OPM's calculation of his accrued leave time, and consequently, the amount he would be paid upon retirement for unused leave time. According to the post office, at the end of 2001, Holmes had a negative leave balance of 16 hours. (Declaration of Jo Ann LeFave, ¶ 5) In 2002, he earned 24 hours but used 176 hours. Consequently, at the end of 2002, he held a negative balance of 168 hours. However, the settlement agreement credited Holmes with

4

20 hours of paid leave per pay period. Consequently, during the period of time covered by the settlement agreement, Holmes earned 192 hours of leave. After accounting for the negative balance of 168 hours, Holmes' retired with a balance of 24 hours and a corresponding terminal leave payment of $824.05. (LeFave Dec. ¶¶ 5, 6, 7)

Holmes claims that, with some exceptions not pertinent here, it is not possible for a postal employee to have a negative balance. Consequently, he argues that his terminal leave payment should reflect 192 hours of annual leave and 96 hours of sick leave. He further alleges that, even on the basis of 24 hours accrued leave, he has not received this payment.

Finally, following the mediation, the post office took deductions from Holmes' pension in the amount of $770.47 for health insurance premiums that were not paid during a period of time that Holmes was not on active pay status. (Holmes Aff. ¶ 12) During this period, Holmes was, on at least two occasions, denied health care coverage on the basis that his insurance had been terminated. (Plaintiff's Resp. Ex. F)

Based upon allegations that this conduct breached the terms of the settlement agreement, Holmes filed an appeal with the EEOC, seeking enforcement of the agreement. (Complaint ¶ 12) By written decision on September 15, 2005, the EEOC found that the post office had not violated the agreement, entitling Holmes to seek relief in this court according to 29 C.F.R. §1614.407(c).

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); **Lawrence v. Kenosha County**, 391 F.3d 837, 841 (7th Cir. 2004); **Branham v. Snow**, 392 F.3d 896, 901 (7th Cir. 2004); **Windle v. City of Marion, Indiana**, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); **Lawrence**, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); **Ballance v. City of Springfield, Illinois Police Department**, 424 F.3d 614, 616 (7th Cir. 2005); **Hottenroth v. Village of Slinger**, 388 F.3d 1015, 1027 (7th Cir. 2004); **Palmer v. Marion County**, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. **Spiegula v. Hull**, 371 F.3d 928, 935 (7th Cir. 2004); **Hines v. British Steel Corporation**, 907 F.2d 726, 728 (7th

6

Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994).  *See also* ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder

7

could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc***., 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Holmes' complaint in this court raises an initial question of jurisdiction. In his complaint, Holmes states that this court's jurisdiction is founded upon 29 C.F.R. §1614.407(c) and asks the court to "review and reverse" the September 15, 2005 decision of the EEOC Office of Federal Operations. He also asks the court to enforce the terms of the settlement agreement, including a determination that the post office has breached the agreement's terms.

The circumstances of this case do not permit this court's review, reversal, or vacation of the EEOC's decision. The circumstances under which a district court may review an agency decision arise when the EEOC has determined that a federal employer has not complied with a prior order. 29 C.F.R. §16514.503(g) That is not the circumstance presented by Holmes' complaint. Rather, the regulations regarding the agency's compliance with a settlement agreement are contained at 29 C.F.R. §1614.504. This section does not describe the right of the complainant to bring an action to enforce a settlement agreement in the district court. However, settlement agreements covered by §1614.504 specifically are included in 29 C.F.R. §1614.401(e), describing the process for appealing an agency's decisions and providing that a complainant

8

may file a civil action upon receipt of the EEOC's final decision on an appeal. 29 C.F.R. §1614.407(c)  In addition, claims under the Rehabilitation Act are enforceable through Title VII of the Civil Rights Acts of 1964. 29 U.S.C. §794a(a)(1)  The section governing civil actions by federal employees states that "within 90 days of receipt of notice of final action . . . by the Equal Employment Opportunity Commission upon an appeal from a decision or order of [an] agency . . . an employee . . . if aggrieved by the final disposition of his complaint . . . may file a civil action." 42 U.S.C. §2000e-16(c)

Regardless of the source, this court's jurisdiction provides for *de novo* review of the complainant's allegations. **Smith v. Potter**, 445 F.3d 1000, 1011 (7th Cir. 2006). *See also* **Francisco v. Principi**, 32 Fed. Appx. 141, 144 (7th Cir. 2002)(*citing* **Ruedlinger v. Jarrett**, 106 F.3d 212, 215 (7th Cir. 1997) ("[T]he district court correctly determined that it had jurisdiction to enforce the parties' settlement agreement."). The court treats the settlement agreement as a federal contract and applies the federal common law to its interpretation. **Funeral Financial Systems v. United States**, 234 F.3d 1015, 1018 (7th Cir. 2000); **Francisco**, 32 Fed. Appx. at 145.

This approach requires that the court first determine if the contract is ambiguous. **Funeral Financial Services**, 234 F.3d at 1018. An ambiguous contract is one that "is subject to reasonable alternative interpretations." **Grun v. Pneumo Abex Corporation**, 163 F.3d 411, 420 (7th Cir. 1998). To make this determination,

9

the contract is read "in an ordinary and popular sense, as would a person of average intelligence." *United States v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2003). If the contract is not ambiguous, its written words "dictate the disposition of a dispute involving that contract." *Funeral Financial System*, 234 F.3d at 1018 ("When the language of an unambiguous contract provides an answer, then the inquiry is over.").

Extrinsic evidence regarding the formation of an unambiguous contract may not be considered by the court. *Grun*, 163 F.3d at 420. However, the court may look to extrinsic evidence if a "literal application of the text would lead to absurd results or thwart the obvious intentions of the drafters." *Funeral Financial Services*, 234 F.3d at 1018. In addition, "a contract might seem clear only because the judicial reader didn't understand the commercial context of the contract," and under the doctrine of extrinsic ambiguity, the court may clarify the context through the use of extrinsic evidence. *Rand Motors*, 305 F.3d at 774-775. However, "Where the parties' express language prohibits additional terms from being read into the contract, there is a presumption that the contract is complete in and of itself." *N.L.R.B. v. International Broth. of Elec. Workers, Local Union 16, AFL-CIO*, 425 F.3d 1035, 1040 (7th Cir. 2005).

The court's resolution of this claim begins with the conclusion that the settlement agreement at issue is not ambiguous. The agreement's limited scope clearly addresses only the dates during which Holmes was on paid administrative leave, the date of his

10

retirement, and the payment of attorney fees on Holmes' behalf. The agreement includes procedures to follow in the event subsequent disputes arose, which parallel the appeal regulations at 29 C.F.R. §1614.401. Finally, the contract's limited scope is indicated by its integration clause. Holmes has pointed to no portion of this agreement that is capable of multiple reasonable interpretations. Rather, he generally argues that the settlement agreement's silence on what he terms the "usual rules" regarding the retirement of postal service employees should be interpreted to indicate that these rules do not apply to his retirement. There is nothing in the contract to support this conclusion, and to the extent that Holmes offers evidence of this interpretation, it is extrinsic evidence that is not properly before the court.

Holmes first objects to the $59,984.00 deduction made in calculating his retirement benefit. Holmes states that during the course of the mediation calculations were made by the mediator that did not account for this deduction. Holmes based his acceptance of the settlement agreement on these preliminary settlement terms.[1]

Holmes' use of the mediator's comments provide an example of his misplaced reliance on extrinsic evidence. Holmes has not offered an affidavit of the mediator and instead relies on his

---

[1] However, Holmes has not alleged that he informed either the mediator or the Postal Service of this withdrawal during the settlement discussions. Holmes would have been in the best position to raise these issues and ask whether the withdrawal would have any effect on his retirement benefits. Additionally, the mediator was employed by the EEOC, so any miscalculations cannot be attributed to the Postal Service.

11

own representations of the mediator's conduct. Even assuming that the mediator mistakenly represented to Holmes that this deduction would not be made in his case, and further assuming Holmes could clear the hearsay objections to this evidence, evidence of the mediator's conduct remains outside the scope of admissible evidence because this agreement is not ambiguous.

Holmes further argues that the break in his employment which forced him to withdraw this money was caused by the conduct of the postal service, leading to the claim that arose while he was employed in Minnesota. Because the terms of the settlement of the Minnesota case included restoring his employment retroactively, Holmes appears to argue that the postal service is responsible for the restoration of these withdrawn retirement funds. This argument is without merit. The interpretation of this prior settlement agreement is not before this court. There is no indication that Holmes' withdrawal of these funds was anything but voluntary. In addition, there is no indication that the settlement of the Minnesota case, or this matter, was intended to give Holmes' access to the same $59,984 twice. Holmes further argues that extrinsic evidence is necessary because "the intent of the parties present at the mediation was for Holmes to receive a full retirement." (Plaintiff's Memorandum, p. 15) However, even considering Holmes' statements regarding the mediator's intent, there is no evidence that the parties intended the postal service to replace Holmes' withdrawal of this amount.

12

Holmes' challenge to the "high-three average" method for calculating his salary and his statement that the OPM improperly used his military service to arrive at 30 years of service, similarly are based on the argument that where the settlement agreement is silent, the "usual rules" do not apply. Holmes appears to offer no dispute that in calculating his retirement the OPM has used its standard procedures. Instead, he asks the court to conclude that the agreement's silence on these subjects must be read to indicate the parties' intent to alter the usual rules. As before, the contract's silence cannot be considered a source of ambiguity. If the intent of the agreement was to affect wholesale changes to numerous terms of Holmes' employment and retirement, this can be enforced only if reflected in the agreement. *See* **Rand Motors**, 305 F.3d at 775 ("[T]he party challenging the literal meaning must present objective evidence, not just his say-so that the contract does not mean what it says.").

Holmes also claims that he did not receive his terminal leave payments as required by section 1(a) of the settlement agreement. These payments, which represent a lump sum payment for accrued but unused leave at the time of retirement, are not addressed by this, or any section of the settlement agreement. Section 1(a) regards only the dates and salary rates of Holmes' employment. The parties do not dispute that during the period of time covered by the agreement, Holmes earned 192 hours of leave. Holmes' single dispute to the calculation of his accrued leave, which purported to account for a pre-existing negative balance,

13

is the statement that "the only way for a USPS employee to arrive at a negative leave balance is if the USPS employee is approved for extended leave under certain emergency circumstances, which was not done here." (Plaintiff's Memo. p. 17) Holmes offers no evidence in support of this statement. Further, because the settlement agreement says nothing regarding the means by which Holmes' terminal leave payment will be calculated, the court cannot see how its miscalculation results in a breach of the settlement agreement or can be considered part of the "enforcement" of the settlement agreement.

The same analysis is necessarily applied to Holmes' claim that his backpay and retirement were improperly subjected to deductions for unpaid health insurance premiums. Specifically, he argues that nothing in Section 1(a) of the settlement agreement entitled the postal service to take these deductions. In fact, this section, and the agreement as a whole, do not address this topic at all. Holmes again has twisted the agreement's silence into a definitive statement on a topic that simply is not within the subject matter of the agreement. Even assuming that the deductions were improperly made, this conduct might violate some provision governing Holmes' employment with the post office. However, that provision is not contained within the settlement agreement, and it is only the settlement agreement that is before this court. *See e.g.,* **McGee v. Illinois Department of Transportation**, No. 02 C 0277, 2002 WL 31478261 at *4-5 (N.D. Ill. 2002) ("An essential prerequisite to defendants' argument is that the

14

conduct challenged in this lawsuit is conduct that falls within the scope of the Decree.").

Holmes' claims arise from a basic misunderstanding. The settlement agreement in this matter unambiguously purports to be nothing more than the resolution of his Rehabilitation Act claim and the establishment of the employment dates and salaries so his retirement benefits could be calculated. Holmes' arguments before this court appear to assume that all the terms of his employment and retirement with the postal service have been supplanted by this agreement. There simply is no evidence that the settlement agreement was intended to be given this expansive scope. Accordingly, the defendant's motion for summary judgment is **GRANTED**.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, John E. Potter, Postmaster General of the United States Postal Service, on July 7, 2006, is **GRANTED**, and the Motion to File Supplement to Reply - Instanter filed by the defendant on December 11, 2006, is **DENIED AS MOOT.**

ENTERED this 12th day of March, 2007

                                      s/ ANDREW P. RODOVICH
                                         United States Magistrate Judge